1   Michael D. Adams (State Bar No. 185835)
    madams@rutan.com
2   RUTAN & TUCKER, LLP
    611 Anton Boulevard, Suite 1400
3   Costa Mesa, California 92626-1931
    Telephone:   714-641-5100
4   Facsimile:   714-546-9035

5   Leslie N. Harvey (State Bar No. 241203)
    lharvey@cov.com
6   COVINGTON & BURLING LLP
    One Front Street
7   San Francisco, CA 94111
    Telephone:  (415) 591-6000
8   Facsimile:  (415) 591-6091

9
    Attorneys for Plaintiff
10  THE AMERICAN AUTOMOBILE ASSOCIATION, INC.

11          IN THE UNITED STATES DISTRICT COURT

12        FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  THE AMERICAN AUTOMOBILE <br> ASSOCIATION, INC., <br><br> 14 <br><br> 15     Plaintiff, <br><br> 16     v. <br><br> 17  AAA ALL-STAR DISCOUNT <br> AUTO TRANSPORTERS, INC. <br> 18  AND LISA LOPTMAN <br><br> 19     Defendants. <br><br> 20 | Civil Case No. 11-CV-10078 GAF (VBK) <br><br> **PLAINTIFF THE AMERICAN AUTOMOBILE ASSOCIATION, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Date:   April 9, 2012** <br> **Time:   9:30 a.m.** <br> **Ctrm:   740** |

21

22          TO THE HONORABLE GARY A. FEESS AND DEFENDANTS AAA

23  ALL-STAR DISCOUNT AUTO TRANSPORTES, INC. AND LISA LOPTMAN :

24          PLEASE TAKE NOTICE that on April 9, 2012 at 9:30 a.m. or as soon

25  thereafter as the matter may be heard in Courtroom 740  of the above-entitled

26  Court, Plaintiff THE AMERICAN AUTOMOBILE ASSOCIATION, INC.

27  ("Plaintiff" or "AAA") will request that the Court enter default judgment in this

28

1  matter against Defendants AAA All-Star Discount Auto Transporters, Inc. and Lisa
2  Loptman ("Defendants").

3        Plaintiff served the Summons and Complaint on Defendants on December
4  12, 2011, as evidenced by the Proofs of Service on file with this Court. *See* Dkts.
5  #4, 5. Defendants have failed to appear or otherwise respond to Plaintiff's
6  Complaint within the 21 day time period prescribed by the Federal Rules of Civil
7  Procedure. The Court entered default against Defendants on February 2, 2012.
8  *See* Dkt. #12. Defendants are not minors or incompetent persons or in military
9  service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of
10  1940. As such Plaintiff requests that the Court enter default judgment against
11  Defendants for the injunctive relief Plaintiff requested in its Complaint, and
12  Plaintiff's attorneys' fees and costs under 15 U.S.C. § 1117(a).

13  Dated:  March 7, 2012                  RUTAN & TUCKER, LLP
14                                     MICHAEL D. ADAMS

15                              By:       /s/ Michael D. Adams
16                                  Michael D. Adams
                                  Attorneys for Plaintiff
17                                    AMERICAN AUTOMOBILE
                                  ASSOCIATION, INC.

18
19
20
21
22
23
24
25
26
27
28

1

**INTRODUCTION**

2      Plaintiff The American Automobile Association, Inc. ("AAA") requests that
3 this Court enter a default judgment against Defendants AAA All-Star Discount
4 Auto Transporters, Inc. and Lisa Loptman.

5      Defendants are in default. On December 5, 2011, AAA filed its Complaint
6 against Defendants. Dkt. #1. On December 12, 2011, AAA served Defendants
7 with the Summons and Complaint. Dkts. #4-5. Defendants have failed to plead or
8 otherwise defend the claims raised in the Complaint as provided by the Federal
9 Rules of Civil Procedures.

10      AAA is entitled to a default judgment. On January 31, 2012, well after
11 expiration of Defendants' period to respond to the Complaint, AAA filed Requests
12 for the Clerk to Enter Default against both Defendants along with the supporting
13 Declaration of Michael D. Adams. *See* Dkts. #10-11. On February 2, 2012, the
14 Clerk entered the Defendants' default on the docket. *See* Dkt. #12. Pursuant to
15 Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1, based on the facts
16 set forth below, AAA is entitled to entry of default judgment and to the relief
17 available under federal and state law.

18      AAA therefore requests that the Court issue the permanent injunction
19 prayed for in the Complaint against Defendants' infringing conduct to avoid future
20 irreparable harm to its trademarks. AAA also requests an award of its attorneys'
21 fees and costs because Defendants' conduct was willful, making this action an
22 "exceptional case" under 15 U.S.C. § 1117(a).

23

**FACTUAL BACKGROUND**

24      AAA is a not-for-profit, non-stock corporation organized and existing under
25 the laws of Connecticut, with its principal place of business in Heathrow, Florida.
26 *See* Compl. at ¶ 8. AAA has used the AAA Marks in commerce since 1902, and
27 over the last century, the mark has developed significant fame and goodwill in
28 connection with a variety of goods and services, including AAA's well known

discount and automobile-related services. *See* Compl. at ¶¶ 13-19; *see also* Declaration of James G. Brehm ("Brehm Decl.") at ¶ 2.  As part of the extensive services that AAA offers under the AAA Marks, AAA permits local businesses to use or display the AAA Marks if the businesses meet the exacting evaluation criteria used by AAA.  *See* Compl. at ¶¶ 14, 17-18; *see also* Brehm Decl. at ¶ 2. Consequently, AAA members and the public know, and expect, that businesses displaying the AAA Marks meet AAA's rigorous standards.  *See id.*; *see also* Brehm Decl. at ¶ 3.  AAA maintains a robust trademark enforcement program that pursues businesses that unlawfully attempt to benefit from an apparent association or affiliation with AAA.  *See* Brehm Decl. at ¶ 4.

Defendants have used the AAA Marks without authorization in association with the business name AAA All-Star Discount Auto Transporters, Inc.  *See* Compl. at ¶¶ 21-24; Brehm Decl. at ¶ 5.

In or around April 2010, AAA learned that Defendants were operating an automobile shipping business under the name "AAA All*Star Discount Auto Transporters, Inc"  and sent Defendants a cease and desist letter regarding their unauthorized use of the AAA Marks.  *See* Compl. at ¶¶ 25-26.

Defendant Loptman contacted AAA by telephone on May 4, 2010, to discuss the letter, at which point AAA reiterated its request that Defendants cease use of the AAA Marks and adopt an alternative business name.  *See id.* at ¶ 27.

 Defendants failed to comply with AAA's requests, and AAA sent a second cease and desist e-mail on June 1, 2010.  *See id.* at ¶¶ 28-29.

Defendant Loptman responded to AAA's e-mail on June 3, 2010, indicating that Defendants "made the necessary adjustments that AAA requested." *See id.* at ¶ 30.

AAA confirmed that Defendants had changed the name on their website to AA All*Star Discount Auto Transporters, Inc. *See id.* at ¶ 31.  AAA believed Defendants' representations and trusted their apparent good faith efforts to comply

4

1    with AAA's requests, and sent Defendants a letter agreeing to forego litigation at

2    that time. *See id.* at ¶ 32.  AAA explained, however, that it would continue to

3    monitor Defendants' compliance and take further action if necessary to protect its

4    rights. *See id.*

5        Despite Defendant Loptman's representations, Defendants resumed use of

6    the AAA Marks only six months after assuring AAA that they "made the

7    necessary adjustments that AAA requested."  Specifically, on or around January 5,

8    2011, AAA discovered that Defendants had resumed use of the AAA Marks on

9    their website and were once again referring to their business as "AAA All*Star

10   Discount Auto Transporters, Inc." *See id.* at ¶ 33.

11       AAA immediately sent another cease and desist letter, *see id.* at ¶ 34, which

12   apparently prompted Defendants to change the name of the business on their

13   website to "A*AA All*Star Auto Transporters, Inc., *id.* at ¶ 35.  Nevertheless,

14   AAA discovered that Defendants continued to operate the business under the

15   name "AAA All-Star Discount Auto Transporters, Inc.," despite the changes to the

16   website, and that the business was registered with the Federal Motor Carrier

17   Safety Administration under the name "AAA All-Star Discount Auto

18   Transporters, Inc." *See id.* at ¶¶ 36-37.  In fact, Defendants continued to refer to

19   their business as "AAA All-Star Discount Auto Transporters" on their answering

20   machine and various website advertisements. *See id.* at ¶ 36.

21       Based on the foregoing, AAA filed its Complaint with this Court on

22   December 5, 2011, *see* Dkt. #1, and served the Complaint on Defendants on

23   December 12, 2011, *see* Dkts. #4-5.

24       Defendants have failed to file any appropriate response to the Complaint

25   with this Court.   Even prior to being served, Defendants received noticed of this

26   lawsuit, contacting AAA by telephone on December 7. *See* Adams Decl. at ¶ 3.

27   Over the next two months, AAA attempted, but was unable, to reach a settlement

28   with Defendants concerning the allegations in the Complaint. *See* Declaration of

5

1   Patrick M. Phelan ("Phelan Decl.") at ¶ 4. During that time, AAA informed
2   Defendants that it would seek entry of Defendants' default in the absence of a
3   resolution or response to the Complaint. *See id.* The parties did not reach a
4   resolution. In fact, in an ambiguous and unexplained fax sent to AAA on
5   February 17, Defendants' fax banner still identified the business as "AAA All
6   Star." *See id.* at ¶ 5.

7        Upon AAA's request, the Clerk entered Defendants' default on February 2,
8   2012, and AAA now seeks to permanently enjoin Defendants' infringing conduct
9   and an award of reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a).

10   **ARGUMENT**

11   **I.   THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST**
12   **DEFENDANTS.**

13        Federal Rule of Civil Procedure 55(b) allows the Court to enter a judgment
14   by default against a party when that party has "failed to plead or otherwise
15   defend" and the clerk has entered the party's default on the docket. *See, e.g.,*
16   *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1287
17   (C.D. Cal. 2001). "[O]nce the court clerk enters a default, the well-pleaded factual
18   allegations of the complaint are taken as true, except those allegations relating to
19   damages." *Beachbody, LLC v. Johannes*, No. CV 11-1148 PSG (RZx), 2011 WL
20   3565226, at *2 (C.D. Cal. Aug. 12, 2011).

21        In the absence of any objection by Defendants and given the facts described
22   in the Complaint and in this Brief, AAA's allegations establish that Defendants'
23   unauthorized use of the AAA Marks constitutes federal and common law
24   trademark infringement, federal and common law unfair competition, federal and
25   state trademark dilution, and state statutory unfair competition practices.

26        This Court may consider several factors in determine whether to grant
27   default judgment, including: (i) the possibility of prejudice to AAA; (ii) the merits
28   of AAA's claims; (iii) the sufficiency of AAA's complaint; (iv) the money at

1   stake; (v) the possibility of disputes concerning material facts; (vi) the possibility

2   of excusable neglect; and (vii) policy favoring a decision on the merits.  Eitel v.

3   McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

4        In this case, the *Eitel* factors weigh heavily in AAA's favor.  First, AAA

5   will be prejudiced by Defendants' continued use of the AAA Marks in connection

6   with its automobile-related services because such use is likely to confuse

7   consumers and damages the goodwill associated with the AAA Marks.  Second,

8   AAA's Complaint sufficiently establishes the factual and legal merits of AAA's

9   claims.  Third, AAA has decided to forego its substantial claims for damages and

10  instead seeks a permanent injunction and reasonable attorneys' fees and costs

11  expended in pursuing this matter.  Fourth, the material facts are undisputed.  Fifth,

12  and finally, Defendants' failure to respond to the Complaint was not the result of

13  excusable neglect -- Defendants have been aware of the issues at the core of this

14  dispute since 2010, well before AAA filed this lawsuit, and Defendants were

15  served with the Complaint and given the opportunity to resolve this matter short of

16  default judgment, but opted not to do so.

17       AAA is therefore entitled to injunctive relief, as well as costs and attorneys'

18  fees associated with this action.

19  **II.    DEFENDANTS' UNAUTHORIZED USE OF THE AAA MARKS**

20  **VIOLATES AAA'S RIGHTS.**

21       **A.    Defendants Unauthorized Use of the AAA Marks Constitutes**

22            **Federal Trademark infringement and Unfair Competition.**

23       Defendants' registration and use of the business name AAA All-Star

24  Discount Auto Transporters, Inc. constitutes trademark infringement and unfair

25  competition in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C.

26  §§ 1114 and 1125(a).  To prevail on its claims for trademark infringement and

27  unfair competition under the Lanham Act, AAA must establish that the

28  "trademark infringer's use of [its] mark creates a likelihood that the consuming

7

1   public will be confused as to who makes the product." *Jada Toys, Inc. v. Mattel,*

2   *Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations omitted).

3       In this Circuit, courts determine likelihood of confusion by analyzing the

4   eight *Sleekcraft* factors:  (1) the strength of the mark; (2) the proximity of the

5   goods and services; (3) the similarity of the marks; (4) evidence of actual

6   confusion; (5) marketing channels used; (6) type of goods and the degree of care

7   likely to be exercised by the purchaser; (7) defendants' intent in selecting the

8   mark; and (8) likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft*

9   *Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  Although courts analyze each of the

10  eight factors, "[t]he test is a fluid one and the plaintiff need not satisfy every

11  factor, provided that strong showings are made with respect to some of them."

12  *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 631 (9th Cir. 2009).

13  In fact, the importance of the individual factors will vary by case, and a court may

14  reach a conclusion on confusion by only considering a subset of the factors.

15  *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th

16  Cir. 1999).

17      Here, the well-pled allegations in the Complaint indicate that regardless

18  what factors the Court considers, AAA will prevail as it can make a "strong

19  showing" with respect to at least six of the eight factors.

20      *First*, the AAA Marks are among the strongest anywhere.  AAA owns more

21  than 70 United States trademark registrations (many of which are incontestable,

22  *see* 15 U.S.C. § 1605) for its AAA Marks, which cover a variety of goods and

23  services, most notably discount and automobile-related services.  In addition,

24  AAA has made widespread commercial use of the AAA Marks, and those marks

25  are well known to AAA members and the general public. *See Am. Auto. Ass'n,*

26  *Inc. v. AAA Auto Club of Queens, Inc.*, No. 97-CV-1180, 1999 WL 97918, at *4

27  (E.D.N.Y. Feb. 8, 1999).  Indeed, "the AAA Marks strongly indicate the source of

28  services provided and are therefore entitled to the greatest degree of protection

1  afforded by the Lanham Act." *Id.*

2      *Second*, the overlap in the goods and services offered by the parties under

3  the AAA Marks provides further evidence of confusion.  The relatedness of the

4  goods turns on whether customers are "likely to associate" the two products or

5  whether consumers could "reasonably conclude" that the goods and services

6  where being provided by the same source. *Surfvivor Media, Inc.*, 406 F.3d at 633

7  (internal citations omitted).  Defendants use of the AAA Marks in connection with

8  automobile-related services makes it not only likely, but probable, that consumers

9  would associate Defendants' business based on AAA's fame for offering its

10  members automobile-related services.  As this Circuit has found, "[t]he use of

11  similar marks to offer similar products accordingly weighs heavily in favor of

12  likelihood of confusion." *Brookfield Commc'ns, Inc.* 174 F.3d at 1056.

13      *Third*, Defendants' use of "AAA" in their business name is similar to

14  AAA's Marks in that it copies the mark in its entirety and combines it with

15  generic terms that are related to goods and services for which AAA is well known

16  (*i.e.*, discount and automobile-related services).

17      *Fourth*, both AAA and Defendants use the same outlets to advertise their

18  goods and services, including the Internet. *See* Compl. ¶¶ 2, 23, 36.; *see also*

19  *Brookfield Commc'ns, Inc.* 174 F.3d at 1057 (courts have "consistently

20  recognized" that both parties advertising on the Internet "exacerbat[es] the

21  likelihood of confusion").

22      *Fifth*, given the nature of the services offered by Defendants, consumers are

23  unlikely to exercise a high degree of care when purchasing those services.

24  Specifically, consumers looking for auto transport services are faced with a

25  significant number of potential auto transport businesses.  In these circumstances,

26  there is a heightened likelihood that a consumer who sees AAA's Marks

27  associated with a business name will mistakenly believe that by contacting

28  Defendants' business, they are acquiring automobile-related services associated or

1  affiliated with AAA.

2       *Sixth*, and finally, Defendants' unauthorized use of the AAA Marks

3  demonstrates improper intent. Defendants' awareness of AAA's exclusive rights

4  in the AAA Marks in connection with automobile-related services, both through

5  the fame of AAA's Marks with respect to these services and the several cease and

6  desist letters AAA sent to Defendants, is evidence of Defendants' improper intent

7  to benefit from an association or affiliation with AAA. Indeed, as alleged in the

8  Complaint, Defendants' actions were willful, deliberate, and in bad faith. *See*

9  Compl. ¶¶ 2, 38, 42, 46, 51, 56, 60, 64, 69, 76.

10       In sum, AAA has established that Defendants' conduct constitutes

11  trademark infringement because Defendants' use of the AAA Marks "creates a

12  likelihood that the consuming public will be confused as to who makes the

13  product." *Jada Toys, Inc.*, 518 F.3d at 632.

14      **B.**    **Defendants' Infringing Use Constitutes Federal Trademark**

15          **Dilution.**

16       To establish that Defendants violated 15 U.S.C. § 1125(c), AAA must

17  demonstrate that: (1) it owns a famous and distinctive mark; (2) Defendants made

18  use of that mark in interstate commerce; (3) Defendants' use began after plaintiff's

19  mark became famous; and (4) Defendants' use dilutes the distinctive quality of the

20  famous marks by blurring or tarnishment. *See* 15 U.S.C. § 1125(c)(1); *Jada Toys,*

21  *Inc.*, 518 F.3d at 637.

22       *First*, as discussed above, the AAA Marks are famous and distinctive as a

23  result of AAA's history and experience providing high quality products and

24  services and AAA and its member clubs' continuous and extensive advertising,

25  promotion, and sale of such products under the AAA Marks throughout the nation.

26  *See* 15 U.S.C. § 1125(c)(2)(A) (factors demonstrating a mark's fame); *see also*

27  *Am. Auto. Ass'n, Inc. v. AAA Ins. Agency, Inc.*, 618 F. Supp. 787, 790 (W.D. Tex.

28  1985) ("AAA is a widely known organization that has been extensively advertised

and promoted throughout the United States. … [T]he 'AAA' name has come to be
relied upon by a significant segment of the public as indicating AAA and its
services."); *AAA Auto. Club of Queens, Inc.*, 1999 WL 97918, at *5 ("[T]he AAA
Marks strongly indicate the source of the services provided and are therefore
entitled to the greatest degree of protection under the Lanham Act.").

   *Second*, Defendants' use of the AAA Marks is in interstate commerce in
that it offers its services throughout the United States. *See* Phelan Decl. at ¶ 3.

   *Third*, Plaintiff's AAA Marks became famous prior to the Defendants use
of the marks.  AAA has used the AAA Marks continuously in commerce since
1902.  *See* Compl. ¶ 19.  Defendants have offered no evidence as to when their use
of the AAA Marks began.

   *Fourth*, and finally, Defendants have diluted Plaintiff's AAA Marks by
blurring their ability to signify the products and services offered by AAA.  To
establish a claim for dilution by blurring, AAA must prove that an association
arising from the similarity between Defendants' mark and AAA's famous marks
"lessen[s] the capacity of a famous mark to identify and distinguish goods or
services." *Panavision Intern., LP v. Toeppen*, 945 F. Supp. 1296, 1303-04 (C.D.
Cal. 1996).  The analysis focuses on "a 'whittling away' of the selling power and
value of a trademark by unauthorized use of the mark." *Id.* at 1304.

   Federal law specifies factors for courts to consider as proof that dilution by
blurring has occurred, all of which favor such a finding here.  15 U.S.C. §
1125(c)(2)(B)(i)-(vi).  As established above, the AAA Marks are famous, well-
recognized, and distinctive, and are being exclusively used by AAA for the
products and services they are intended to signify.  Moreover, Defendants'
business name incorporates, exactly, the AAA Marks, and Defendants intended to
create an association between their automobile-related service and those offered
by AAA.

   Defendants' use of the AAA Marks in their business name and advertising

1   causes customers to link the AAA Marks with Defendants' services and dulls the

2   consuming public's association of the AAA Marks with products and services

3   authorized by AAA. *See* Brehm Decl. ¶ 6. Alternatively, consumers could

4   believe Defendants' products and services are in fact associated with AAA. *Id.*

5        Therefore, Defendants' use of the AAA Marks is dilutive.

6      **C.**    **Defendants' Infringing Uses Constitute Trademark Dilution**

7           **under California Law.**

8        California Business and Professions Code § 14247 provides that, "an owner

9   of a mark that is famous and distinctive . . . shall be entitled to an injunction

10   against another person's commercial use of a mark or trade name, if such use

11   begins after the mark has become famous and is likely to cause dilution of the

12   famous mark." For the reasons stated above with respect to its Lanham Act

13   claims, AAA has demonstrated it owns famous and distinctive marks, that

14   Defendants used the AAA Marks after they became famous, and in doing so,

15   diluted the AAA Marks. *See* Part II-B, *supra*.

16      **D.**    **Defendants' Infringing Uses Constitute Common Law**

17           **Trademark Infringement and Unfair Competition.**

18        To prevail on its state trademark infringement claim, AAA must show "that

19   it owns a valid mark, that the mark was used without its consent, and that such

20   unauthorized use is likely to cause confusion, mistake, or deception." *Credit One*

21   *Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009). The

22   likelihood of confusion analysis is similar under the Lanham Act and California

23   law. *See Chimney Safety Inst. of Am. v. Chimney King*, No. C 03-05814 WHA,

24   2004 WL 1465699, at *3 (N.D. Cal. May 27, 2004). For the reasons stated above

25   with respect to its Lanham Act claims, AAA has demonstrated that Defendants

26   used AAA's valid mark without consent and that such use likely caused

27   confusion. *See also Philip Morris USA Inc. v. Banh*, No. CV 03-4043 GAF

28   (PJWx), 2005 WL 5758392 (C.D. Cal. Jan. 14, 2005) (granting default judgment

1   motion in Lanham Act trademark infringement and California common law unfair
2   competition case where plaintiff alleged extensive use of famous marks in
3   commerce, which likely caused confusion).

4       **E.    Defendants' Infringing Uses Constitute Unfair Competition**
5           **Under Cal. Bus. & Prof. Code § 17200.**

6       California's Unfair Competition Law (the "UCL") prohibits "'unlawful,
7   unfair, or fraudulent business act or practice and unfair, deceptive, untrue or
8   misleading advertising,'" as well as any act prohibited by California's false
9   advertising statute. *See Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l,*
10  *Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (*quoting* Cal. Bus. & Prof. Code § 17200).
11  Any business practice that is prohibited by law, whether "civil or criminal,
12  statutory or judicially made . . . federal, state or local," is also proscribed by the
13  "unlawful" prong of the UCL. *McKell v. Washington Mutual, Inc.*, 142 Cal. App.
14  4th 1457, 1474, 49 Cal. Rptr. 3d 227 (2006) (citations omitted).  Because AAA
15  has demonstrated that Defendants' conduct violated the Lanham Act, California
16  statutory law, and California common law, AAA has also demonstrated that
17  Defendants' conduct violated the UCL.

18  **III.    PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF AND AN**
19          **AWARD OF COSTS AND ATTORNEYS' FEES.**

20      **A.    Defendants Should Be Permanently Enjoined Against Any and**
21          **All Uses of the AAA Marks.**

22      AAA seeks a permanent injunction preventing Defendants from registering
23  or using the AAA Marks or any other marks identical or confusingly similar to the
24  AAA Marks.

25      This Court has the "power to grant injunctions . . . to prevent the violation
26  of any right of the registrant of a mark registered in the Patent and Trademark
27  Office." 15 U.S.C. § 1116(a).  Once a trademark holder demonstrates likelihood
28  of confusion, it is entitled to injunctive relief. *See Philip Morris USA Inc. v.*

1   *Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003).  The Lanham

2   Act provides that "[a]ny such injunction may include a provision directing the

3   defendant to file with the court and serve on the plaintiff within thirty days after

4   the service on the defendant of such injunction, or such extended period as the

5   court may direct, a report in writing under oath setting forth in detail the manner

6   and form in which the defendant has complied with the injunction."  15 U.S.C. §

7   1116(a).

8        AAA has established that Defendants' use of the AAA Marks is confusing

9   to consumers and that it reasonably expects such violations to recur.  Thus, AAA

10  seeks a permanent injunction against Defendants' use of marks identical or

11  confusingly similar to the AAA Marks and requests that the Court enter the

12  injunction as requested in AAA's proposed judgment filed herewith.

13       **B.    The Court Should Order Judgment of Plaintiff's Costs and**

14              **Attorneys' Fees.**

15       AAA is also entitled to the costs of this action, *see* Federal Rule of Civil

16  Procedure 54(d)(1) (costs "should be allowed to the prevailing party"); 15 U.S.C.

17  § 1117(a) ("When a violation of any right of the registrant of a mark registered in

18  the Patent and Trademark Office . . . shall have been established in any civil action

19  arising under this chapter, the plaintiff shall be entitled, . . . subject to the

20  principles of equity, to recover . . . the costs of the action."), as well as reasonable

21  attorneys' fees, as allowed in "exceptional cases" under federal law.  15 U.S.C. §

22  1117(a).[1]

23       Although costs are routinely awarded to prevailing trademark plaintiffs,

24

25  _____

26  [1] Because AAA seeks only an injunction and no monetary damages as part of the judgment, it
    acknowledges that its request for attorneys' fees is outside the schedule set by Local Rule 55-3.
    AAA sets forth its argument here as a means of raising this issue with the Court and will file a

27  more detailed written request upon entry of default pursuant to L.R. 55-3 if requested by the
    Court.

28

those seeking fees must show that the case is "exceptional." *Id.* The term "exceptional cases" generally applies to cases in which trademark infringement is "deliberate and willful." *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir. 1982). However, "a case may [also] be deemed 'exceptional' and merit an award of attorneys' fees under the Lanham Act when defendant disregards the proceedings and does not appear." *Philip Morris USA Inc.*, 219 F.R.D. at 502; *see also Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89 CV 104, 1991 WL 641575, at *5 (W.D. Mich. March 13, 1991) (defendant's "lack of cooperation and disrespect for the judicial process constitutes exceptional circumstances warranting an award of attorney's fees to plaintiff in this action.").

Taking AAA's well-pleaded allegations in the Complaint as true, AAA has established that Defendants' infringing conduct was willful, deliberate, and in bad faith, making this action an "exceptional case" within the meaning of the Lanham Act. *See* Compl. ¶¶ 2, 38, 42, 46, 51, 56, 60, 64, 69, 76. Moreover, Defendants' false representations that they would cease use of the AAA Marks despite the fact that they continued using them, *see* Compl. ¶¶ 30-33, along with their refusal to appear in this action, demonstrates a pattern of defiant behavior further justifying an award of attorneys' fees.

The Declarations of Neil K. Roman and Michael Adams filed concurrently herewith establish the amount of hours worked, the claimed rates, and the taxable costs incurred in connection with this case, and the other pertinent facts.

The Declaration of Michael Adams further establishes that the rates charged to AAA and the amount of fees incurred in this matter are reasonable given the nature of the case and local market conditions. *See* Adams Decl. at ¶¶ 9-10.

Accordingly, AAA respectfully requests that the Court award AAA its

1   reasonable attorneys' fees in the amount of $9,330.40 and its taxable costs in the

2   amount of $1,631.39, for a total award of $10,961.79.

3   <u>CONCLUSION</u>

4       For the reasons stated above, The American Automobile Association, Inc.,

5   respectfully requests that the Court enter default judgment against AAA All-Star

6   Discount Auto Transporters, Inc. and Lisa Loptman and grant such other and

7   further relief that is just under the circumstances.

8   Dated:  March 7, 2012

9                                           RUTAN & TUCKER, LLP
                                            MICHAEL D. ADAMS

10                                          By:      /s/ Michael D. Adams

11                                              Michael D. Adams
                                                Attorneys for Plaintiff

12                                              AMERICAN AUTOMOBILE
                                                ASSOCIATION, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY MAIL

2

### STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4       I am employed by the law office of Rutan & Tucker, LLP in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is

5   611 Anton Boulevard, Suite 1400, Costa Mesa, California 92626-1931.

6       On March 7, 2012, I served on the interested parties in said action the within:

7       **PLAINTIFF THE AMERICAN AUTOMOBILE ASSOCIATION, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF**

8   **POINTS AND AUTHORITIES**

9   by placing a true copy thereof in sealed envelope(s) addressed as stated below:

10  Defendant:                                          Defendant:
    AAA All-Star Discount Auto Transporters, Inc.    Lisa Loptman

11  15332 Antioch Street                                15332 Antioch Street
    Pacific Palisades, CA 90272                        Pacific Palisades, CA 90272

12

13

14       In the course of my employment with Rutan & Tucker, LLP, I have, through first-hand personal observation, become readily familiar with Rutan & Tucker, LLP's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that

15  practice I deposited such envelope(s) in an out-box for collection by other personnel of Rutan & Tucker, LLP, and for ultimate posting and placement with the U.S. Postal Service on that same day

16  in the ordinary course of business.  If the customary business practices of Rutan & Tucker, LLP with regard to collection and processing of correspondence and mailing were followed, and I am

17  confident that they were, such envelope(s) were posted and placed in the United States mail at Costa Mesa, California, that same date.  I am aware that on motion of party served, service is

18  presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19       Executed on March 7, 2012, at Costa Mesa, California.

20

21       I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

22

23  _____              _____
        Marie Lee                                        (Signature)

24      (Type or print name)

25

26

27

28

962/017601-0062
2917845.1 a03/07/12